BURLINGTON INSTRUMENT CORPORATION et al., Appellees, v. M. DEBREY et al., Appellants.

No. 44781.

Appeal from Des Moines District Court.—OSCAR HALE, Judge.

JUNE 20, 1939.

Mohland, Kuhlemeier, Fischer & Cray, for appellees.

Dailey & Dailey and Bair & Freeman, for appellants.

SAGER, J.—Defendant Debrey is the inventor of a device for regulating the voltage of the electric current. Sometime in 1933 he interested one Bowen, who undertook to find persons with capital to organize a corporation for the purpose of putting the invention on the market. Bowen contacted plaintiffs Hanna and Kramer to such effect that it was agreed to organize a corporation into which Debrey was to put his patent rights and some machinery, Bowen, $1,000 and his service in the organization, and plaintiffs Hanna and Kramer to pay $5,000 and the expense of incorporation. The defendant, the Simplex Corporation, was the result. The respective interests of the stockholders were agreed to be and stock issued in these proportions: Defendant Debrey and wife, 180 shares; Hanna and Kramer and their wives, 90 shares; and Bowen, 30 shares.

As to what the rights of the parties in the patent were after the corporation was formed is the point upon which this controversy turns. Defendant Debrey claims that the corporation was to have the exclusive right to manufacture and put the device on the market while the title to the patent remained in him. Plaintiffs claim that Debrey executed an assignment which was absolute and gave to the assignees full rights to

manufacture, sell, license or otherwise handle the device as if they were the sole owners thereof.

The rights of a part owner in a patent are admitted to be as appellees contend, but Debrey says that plaintiffs have no interest in the patent itself. He admits the execution of the assignment but contends that it was not what it purports to be, that it was executed with the express oral understanding that when or if the Simplex Corporation ceased to do business or a stockholder sold his stock, all interest in the patent would be automatically at an end and any interest previously held by any such stockholder was to revert to Debrey. Plaintiffs deny that there was any such restriction, limitation or qualification of their interests and claim that they were the absolute owners of an undivided interest with all rights appertaining thereto. In this view they organized the plaintiff, Burlington Instrument Corporation, to engage in the marketing of the device both directly and by license.

Defendants further claim that the agreements with respect to the restrictions on the patent ownership were embodied in the minutes of the first stockholders meeting. These, they say, were made out in longhand on separate sheets of paper and then loosely placed in the minute book. On the trial below, the minutes of the first meeting of stockholders contained no such limitation, whereupon appellants contend, by implication at least, that the minutes found in the book were fabricated to meet the necessity of this lawsuit—"fake" as Debrey designated them in his testimony. Plaintiffs respond with a sweeping denial of these charges and with the assertion that the assignment was intended to accomplish what its language expresses; and that the minutes as produced by them are accurate representations of what took place at that stockholders meeting. It will thus be seen that the case presents only a fact question and the parties claim nothing else for it. In this state of the record we content ourselves with a rather brief analysis of the testimony. However, the case being triable de novo, we have given the record that attention which its importance to the parties deserves.

The assignment of patent upon which appellees rely is, so far as material here, as follows:

"Now, THEREFORE, to all whom it may concern, be it known that for and in consideration of One Dollar, and other valuable

considerations to me in hand paid, the receipt whereof is hereby acknowledged, I have assigned, sold and set over, and by these presents do hereby assign, sell and set over, unto the said Walker D. Hanna a 15% interest, to the said Alfred R. Kramer a 15% interest and to Roger Bowen a 10% interest of the full and exclusive right, title and interest in and to the said invention, as fully set forth and described in the specification prepared and executed by me preparatory to obtaining Letters Patent therefor in the United States only; and I do hereby authorize and request the Commissioner of Patents of the United States to issue the said Letters Patent in accordance herewith.''

This instrument was signed and acknowledged by Debrey on June 9, 1934, the day on which the corporation was organized and the first stockholders and directors meetings were held. The minutes of neither meeting contain any restriction, modification or limitation of the rights in terms conveyed by this assignment— in fact neither the patent nor the patent rights were even mentioned therein.

To meet this situation appellants asserted that these were not in fact the true and correct minutes of what actually took place. They bring forth what is claimed to be a correct copy. This exhibit contains a clause which reads as follows:

''Michael Debrey agreed to make assignment of 10% of his patent to Roger Bowen and 15% to W. D. Hanna and A. R. Kramer corresponding to their percentage of shares in the Corporation as protection against Mr. Debrey forcing bankruptcy in order to sell his patent. If either W. D. Hanna, A. R. Kramer, or Roger Bowen sold all of his stock in this Corporation it was agreed that such individual's assignment of the patent as granted him by Michael Debrey would be automatically cancelled and returned to Michael Debrey. It was agreed that in order to protect the patent from confiscation in case of bankruptcy the patent should be retained by the owners but the sole right to manufacture, sell, sue, etc., should be vested in this Corporation.''

No good purpose would be served by analyzing in detail the testimony of each witness, nor could it be done within the limits of an opinion of reasonable length. The minutes upon which appellees rely are vouched for by the testimony of wit-

ness Riepe. Moreover they were found in the files of the corporation. The minutes produced by appellants were written up by Bowen at Debrey's request about a year and a half after the event, and after strife had arisen. Bowen, whatever his skill as an engineer may be, clearly had no experience whatever in corporation affairs and he admitted as much. Nevertheless he testified that he wrote the original minutes in longhand and many months later reconstructed them from memory alone in the shape of Exhibit D.

As against this there appears the testimony of Riepe, who, by appellant Debrey's own concession, is ''a lawyer of excellent reputation, with a large practice''. Riepe brought to the trial copies of the minutes of the first meeting of the stockholders. The originals of these copies were made by this witness for the use of Bowen in making up the record. These copies were so nearly like the entries appearing in the records of the corporation that there can be no question as to the superior weight of Riepe's testimony over that of Bowen.

In conversations (and there were a number of them), looking to the final arrangement between these parties, Riepe heard nothing of any reservations or restrictions such as are now claimed by appellants. Appellees deny that any such arrangement was ever made or discussed. Riepe was clearly disinterested. His experience as a lawyer would probably make his recollection of events better than that of Bowen, who, being without experience, had been compelled to rely upon the direction of Riepe as to the wording of the minutes to be made. It seems self-evident that the recollection of a witness experienced in such matters would be more vivid and reliable than that of one who merely followed the dictation or direction of another; and the fact that from the attorney's files there were produced copies of the originals so strikingly like those appearing in the minute books, adds confirmation of its verity.

But, appellants argue, Riepe was such a busy lawyer, and engaged in so many affairs, that he could well be mistaken. While this could be true, it was not as likely to happen as that Bowen after the lapse of a year and a half, could sit down and from his unaided memory, restate the wording of minutes which he had not been able to formulate without aid when they were written. Moreover Bowen admits that he had nothing in the way of copies, notes or memoranda with which to refresh his

memory, while Riepe produced from his files, as already noted, copies of the originals which Bowen used in the beginning.

Still another circumstance is disclosed in the record which satisfies us that the court was right in sustaining the contentions made by appellees. When differences arose between the parties interested in the Simplex Corporation, and it had become apparent that the business could not be profitably or at least not satisfactorily continued, appellees by their attorneys addressed to the attorney for appellants, on August 3, 1936, the following letter:

"Dear Mr. Dailey:

"With respect to the affairs of The Simplex Corporation, we submit herewith for the approval of your clients two propositions submitted in the alternative, either one of which may be accepted in writing by you on or before August 7 at 12:00 o'clock noon. Such offer will not remain open beyond that date.

"1. We will pay for the stock of the Simplex Corporation represented by you, being listed in the name of Mr. and Mrs. Debrey and such other persons as they may have transferred shares to for qualifying purposes, represented as a 60% interest in the corporation, the sum of $8,000, upon the following terms, however.

"a. That the affairs of the corporation are substantially as represented by an audit report under date of June 30, 1936 submitted by W. Harry Howard, Public Accountant of the City of Burlington, Iowa, and provide further that the machinery equipment and all assets of the corporation as of the date of delivery of stock are in good condition and providing further that unfilled orders of the company have not been cancelled out. Provided that there is delivered with the stock resignations of the holders thereof as directors of the corporation. This offer contemplates that we will have a period of thirty days from the date of your acceptance to investigate the affairs and condition of the company to determine whether or not the offer has been substantially complied with.

"Upon your acceptance of this offer, the said sum of $8,000. will be deposited immediately in any Burlington bank for delivery to you provided the said stock is likewise deposited with said bank for delivery to us, the closing date thereof to be thirty days from the date of such deposit.

"This offer contemplates that upon acceptance Mr. Debrey will resign immediately from any active connection with the corporation surrendering possession and control of the business upon deposit of the said sum of $8,000.00 for payment and delivery of the stock.

"We hereby offer for delivery to you, our stock in The Simplex Corporation consisting substantially of a 30% interest in the company on the payment in cash therefor in the sum of $4,000.

"This proposition is a buy and sell proposition, contemplating that each party, to-wit, Mr. Debrey, Mr. Hanna and Mr. Kramer will each retain their interest in the patent rights of the regulators dealt in by the corporation.

"2. If Mr. Debrey cares to include an absolute assignment of all his right, title and interest in the patent rights of the regulators in addition to his stock, we will pay for said stock and such assignment the total sum of $12,000.00 upon the terms and conditions as defined under proposition 1 hereof, and provided that Mr. Debrey will not purchase or acquire any outstanding interest in said patent rights from any other person, but will assist Mr. Hanna and Mr. Kramer in acquiring such interest for themselves.

"In event Mr. Debrey will care to buy both our stock and take an absolute assignment of our interest in the patents we will make delivery thereof for the total sum of $8,000, upon the payment of cash therefor."

On August 4, 1936, one of appellants' attorneys addressed to Hanna and Kramer and their wives, the following:

"Attention: Mohland Kuhlemeier, Fischer and Cray, Attorneys for the above named parties.

"Gentlemen: As Attorney for Lucille DeBrey, I hereby accept the offer made by you in your letter of August 3, 1936 to sell the stock of the above named parties for $4000.00, and herewith tender you my check in the sum of $4000.00 for the shares of stock owned by the said parties in the Simplex Corporation.

"Very truly yours. John A. Dailey."

Debrey seeks to avoid the effect of this situation by saying that he had no interest in this transaction and that it was

entirely his wife's affair. In the light of his connection with this part of the transaction it is not surprising that the court doubted, if it did, this claim. He claims that notwithstanding the acceptance of appellees' proposal and receipt of the money proposed to be paid by plaintiffs, the rights of the parties in the patent were still the subject of the controversy; and that even after this transaction appellees, who had put up nearly all of the money to launch the Simplex Corporation, had nothing left in the patent. This, on the record before us, lacks plausibility. A consideration of the whole record leads one to suspect that this controversy arose out of misunderstanding of the extent and nature of the rights conveyed by the assignment of a part interest in the patent. However that may be, we have before us no claim for relief on the ground of fraud, accident or mistake, and we are under no necessity of deciding what the fact may be in that regard.

Without extending this opinion further, we are satisfied, after careful consideration of the whole record and an inspection of the rather numerous exhibits produced, that the trial court very properly found the equities to be to the plaintiffs, and that its decree was right. It should be, and it is, therefore, affirmed.—Affirmed.

MITCHELL, C. J., and MILLER, HAMILTON, OLIVER, STIGER, BLISS, and RICHARDS, JJ., concur.

HALE, J., takes no part.